al. Good morning, Your Honors. May it please the Court, my name is Scott Holliman and I represent Total Terminals and Signal Mutual. I would like to reserve four minutes for rebuttal. Do you mind just pulling that mic down? There you go. Thank you. So for the last 30 years, there was a clear rule with respect to how monaural hearing loss would be compensated under the Longshore and Harbor Workers' Compensation Act. Essentially, you look to the AMA guides to determine the measurement of the extent of the hearing loss, but you do not use the AMA guide's formula for monaural to binaural conversion because that would end up compensating a hearing loss that is only in one ear as though it were a hearing loss in both ears, and that's contrary to the underlying compensation scheme. The Board's decision in this case undid this clear rule. It created confusion and uncertainty and it has significantly disrupted the handling of hearing loss claims under the Longshore Act across the country. I was going to ask you about the implications of the Board's decision. Are you saying it has implications beyond just tinnitus, including kind of questioning some of these original cases about monaural to binaural conversion without tinnitus? The value of the case here, the delta between the two parties is not huge in the scheme of things. I wasn't sure whether this is just a recurring issue across the country or in this circuit. Well, you're right that the amount of money involved in this particular case is not huge in the grand scheme of things, but there are thousands of hearing loss cases that are filed every year. That's my understanding. I don't know the exact number, but it's a large number of cases, and the issue of tinnitus could potentially arise in any of these cases where there is a hearing loss in only one ear. Tinnitus, according to the AMA guides, is something that can be momentary. Many people have experienced tinnitus at some point in their lives. It can be intermittent. Sometimes it's more chronic. And one of the points that I made in my reply brief is that under the Board's reading, when you do this conversion, sometimes it will occur to the benefit of the employer, and sometimes it will, as in this case, occur to the benefit of the claimant. It just depends on what the level of tinnitus is and what the level of monaural hearing loss is. So it has the potential to generate a lot of controversy in all of these cases, which we would argue undermines one of the central goals of the Longshore Act, which is to have an easily calculable, administratively efficient system where people know what the potential liability is insofar as possible. Someone who has monaural loss plus tinnitus presumably has greater hearing impairment than someone who just has monaural loss without tinnitus? Well, I think that you could say that in the sense that if you are thinking about hearing impairment in a broader sense of hearing problems as opposed to loss of hearing. So the statute under Section 13 of the Schedule of Benefits says loss of hearing in one year, 52 weeks. Loss of hearing in two years, 200 weeks. So when you're making determinations of loss of hearing, you are using the AMA guides to measure the extent of the loss, but then the procedure where you get to whole person impairment, it's looking at all of the ways that hearing may be affected. So tinnitus, they add that in at the binaural stage. So does a person who has a loss of hearing in one year but tinnitus as well, do they have greater hearing impairment? I suppose you could say that, but they don't have a loss of hearing in both years, which is what is compensated under the Act. And that's the fundamental problem with the Board's decision. It requires that a hearing loss in one year be compensated as though it were a hearing loss in both years, according to the formula in Subsection B. And the Board's justification for this, as you noted, is the presence of tinnitus. But we think that the Board's reasoning is really kind of a results-oriented, backward, they sort of reason backwards. They say that, well, you can compensate for tinnitus appropriately under Section 13 and the AMA guides. And then they leap to the assumption that, well, we must do it in this case, but the current edition of the AMA guides, the sixth edition, only allows an addition for tinnitus if there is a binaural hearing impairment. So they say, all right, well, then we have to have a binaural hearing impairment in order to add the tinnitus. So how do we get that? Well, we have to use the conversion formula and go from monaural impairment to binaural impairment via that formula. But the problem is they're trying to get a result that seems more equitable, but it is in conflict with the underlying statutory scheme, which distinguishes between a loss of hearing in one ear and a loss of hearing in both ears. I also wanted to emphasize that there are some pretty fundamental differences between tinnitus and hearing loss. And I think this maybe gets back to your point about the hearing loss and hearing impairment, Judge Lee. The idea of hearing loss is distinguished in the AMA guides from tinnitus. So it is a decreased sensitivity to noise. If you have a loss of hearing, you can't hear as well. And we know the mechanism of that. We know that it is objectively verifiable through brain stem testing. And there's a standardized procedure for measuring the extent of loss of hearing. Tinnitus, on the other hand, oh, and it's also permanent. Hearing loss is permanent. Whereas tinnitus, it can be momentary, intermittent, sometimes more chronic. It is a subjective phenomenon. It is the perception of false sounds. It is not a loss of hearing. It is hearing things that are not there. And while it can be a problem for people, it is fundamentally different than a loss of hearing. So another point that I wanted to emphasize that I brought up in my reply brief, but it's a bit of a subtle point, so I thought I would return to it, is that we think that the director and the claimant are confusing the term loss of hearing in both ears, as it's used in subsection B of the Act, versus the term binaural hearing impairment, as it's used in the AMA guides. Because these may seem similar, because you're saying binaural in both ears, but the word binaural can be used differently. So a binaural hearing impairment does not necessarily reflect a loss of hearing in both ears. If you have a loss of hearing in only one of your ears, then your ability to hear using both your ears together is diminished relative to a person who has normal hearing in both of their ears. And the reason for that is that one of your ears, your good ear, is compensating for the deficiency in the ear that has a loss. So you can have a binaural hearing impairment with a loss of hearing in only one ear. It does not necessarily mean you have a loss of hearing in both ears. And we think that this is something that gets confused and conflated in the other party's briefing. I'm so glad you mentioned that, because I actually was grappling with, it seemed like the terms are being used inconsistently. And I think your clarification that the AMA uses it in one way, and the statute in section B uses it a different way, makes sense. So when you're trying to talk about it all at the same time, it's apples and oranges, even though you're using the same words. So, again, our concern is that we want a clear and predictable rule that will allow insurance reserves to be set appropriately, and we want it to be consistent with the statute. And while we understand that sometimes there is a temptation to reach out and find a way to compensate for some condition, it just can't be done if it's inconsistent with the statutory scheme. And there are actually many circumstances in which someone has a condition or a problem that because of the way the act is structured, they end up not getting any compensation for it. I mean, just in the hearing loss context, for example, if someone has loss at the high frequencies, 8,000 hertz, there is nothing, there's no compensation for that, because it's outside of the AMA guide's methodology. Similarly, if you don't get past the 25 decibel fence as an average at the four frequencies, there is no compensation. The claimant concedes, I think it's undisputed, that tinnitus is not compensated if there is no measurable underlying hearing loss. So, and there are other circumstances, too, where there's overcompensation, I would argue, of claimants. And all of this is part of the tradeoffs that underlie the rough justice, that is swift and certain compensation to injured workers. But the price of that is that it's not always, you're not made whole. You at most get two-thirds of your average weekly wage. It's, on the other hand, you don't have to prove negligence. So there's a series of tradeoffs here, and not every condition is compensated. In this case, because of the combination of the current language in the statute and the current language in the sixth edition of the AMA guides, there is no compensation for tinnitus if you have, or there should be none, if you have a loss of hearing in only one ear, because the AMA guides requires that tinnitus be added to, only be added to a measurable binaural hearing impairment. Interestingly, the fifth edition of the AMA guides didn't have that restriction. So they just said that it could be added to a measurable hearing impairment. So if the language of the fifth edition were applicable, we'd be in a completely different situation. And it's entirely possible that if, you know, when they come up with the seventh edition, that they will make changes that will affect how tinnitus can be compensated. But as it is, our view is that the Board, sort of in a results-oriented way, tried to compensate in this particular situation something that is not compensable under the Act. And Mr. Towers already obtained his compensation for the monaural hearing loss, right? So then he came back later to ask that the tinnitus be added. That's correct. The... So we're just talking about the tinnitus. Yeah, I mean, my client promptly paid the 7,000-some dollars that was owed under subsection A. And that is, that's how the Act is supposed to work. It's self-effectuating. There are not supposed to be a need for attorneys to get involved and to put a burden on the claims examiners at the Department of Labor or the ALJs. The hope is, and this usually works, that there is something that can be easily calculated. Someone is injured. Their benefits are calculated. They're paid. They go back to work. Everybody is happy. Unfortunately, in this case, this dispute has continued. And I think that's the way it's continued. But hopefully it will settle things in a way that can avoid future litigation. I don't know if the Court had any questions about the finality issue or... I just have a hypothetical I need to ask you to clarify in my mind. So what if someone actually loses all hearing in one ear? They hear nothing, including don't hear the ringing either that the tinnitus causes. So you only have the ringing in the other ear. That's still considered binaural because you have a hearing loss. Even though you don't have tinnitus in the second ear, you only have tinnitus in the one ear. So that's binaural? Yes, you would have a... That would be compensable. You would have a loss. I'm sorry. That would be compensable? Absolutely, yes. You have a loss of hearing in both ears. You don't necessarily have to have ringing in both ears, so long as the hearing loss is binaural. Yes, well there would be a hearing loss in both ears. And so under the AMA Guide's formula, you could add, if there were tinnitus that was sufficiently problematic, you could add up to 5% for that as well on top of the binaural impairment. So yes, that would be compensable in that scenario. What would be compensable? The binaural hearing loss or the tinnitus? Well, I think both would be in the scenario you're describing because we haven't contested the idea that, I don't think there's any dispute, that it's appropriate to compensate tinnitus under if there is a binaural hearing impairment that rests upon a loss of hearing in both ears under subsection B. That happens all the time and has for many years. Well, it seems like the logic of your argument though would be that somebody who has binaural hearing loss would get compensated at the appropriate rate for that, but tinnitus on top of that is not hearing loss. It's something else. It's an impairment to be sure, but it's not hearing loss. So I think the logic of your position would be that if somebody has a binaural hearing loss, they get compensated for that. They don't get anything extra for tinnitus. Well, yeah, this is sort of a fine point, but I think traditionally tinnitus has been compensated because of its effect on hearing loss. So for instance, the AMA guides point out that if you have an underlying loss of hearing and then you have tinnitus on top of it, then it can, for example, impair speech discrimination. So under the, I guess it's sort of an idea of aggravation, that it can be compensated in that context. But in this case, there is no hearing loss in the right ear. So there is no, so basically the combination of the act and the guides as they currently exist don't allow for tinnitus in this scenario. You know, I think I will reserve the remainder of my time for rebuttal if there are no other questions. Great. Thank you. May it please the Court. My name is Amy Peters from Blue Water Legal, and I represent the Solicitor of Labor, who also will be addressing the Respondent's position. Today you're being asked to determine how to compensate injured workers for tinnitus. This is a very broad and important issue, because tinnitus causes significant disability impacting activities of daily living. This disability is currently compensated under the Longshore Act's Section 908C-13, which controls hearing loss. However, it's previously been considered under the Act's Section 908C-21, which deals with other kinds of disabilities. So in part, what this panel is being asked to look at is, is tinnitus part of hearing loss, or is it something else? Well, you haven't argued that it would be compensable under C-21, right? I have, Your Honor. In the briefing, we did talk about how previously it was, under the West decision, compensable under 98C-21. However, once the AMA granted the hearing loss, it guides in the Fifth Edition, considered and defined tinnitus as part of hearing loss in the general sense. That's when it switched over to being covered under Section 8C-13. That's when what switched over? I mean, it seems like the BRB's decision here was the first one to kind of address this. So it's the first one to address it post the Fifth and Sixth Edition. Before the Fifth and Sixth Edition, tinnitus was not given any special consideration by the AMA guides. And so basically what the boards and the practitioners have done is, under Section 8C-13E, allowed the AMA guides to determine whether or not tinnitus is or is not a component of hearing loss. Did you argue in the agency level that your client would be entitled to additional compensation under C-21? I did, Your Honor. That was one of the arguments that was made at that level. Okay. And how was that resolved? Because it seems like everyone's been focused on C-13. Basically it was resolved because the board adopted the AMA guides' definition of tinnitus as a component of hearing loss. Because basically what the board found is that the AMA guides mandates that tinnitus impacts a person binaurally. And so that particular component of hearing loss is just by its nature compensated binaurally. Now hearing loss may be compensated monaurally or binaurally. When I say hearing loss, I want to be very clear. I'm talking about pure testing hearing loss. So just giving a tone and can the worker hear that tone. That pure testing can be done either monaurally or binaurally, but that does not mean that the worker cannot also have other components that are binaural such as tinnitus. This is not a new issue for this court. In Port of Portland v. Director, this court found that when a worker had a 100% loss on one ear and then pre-existing the work exposures and then came and had additional impact to their remaining good ear, it was the entire disability was compensable and it was a binaural loss. This is a long-standing principle. The defense talked about the aggravation rule. This is exactly where that comes from. It is completely normal under the Long-Term Act, and not just in hearing loss, in all components of the act, that if a condition combines with, accelerates, or contributes to another condition, the whole condition is compensable because of the limitations that are already built into the act. Workers only get two-thirds of their average weekly wage, up to a maximum. There's already limitations for hearing loss in how many weeks. And what we're seeing here is we're seeing the defense industry trying to take the AMA guides and guidelines anymore to reduce compensation to injured workers. Under the Fifth, if an injured worker had monaural hearing loss, they'd get monaural tinnitus. But because the AMA changed how they defined tinnitus to be a binaural condition, that's why we're standing here, because it means, in many instances, more compensation to injured workers. But not always. And it doesn't mean we're looking at the peer testing and increasing the rating for the peer testing. Because Mr. Tower's peer testing gives him a 9.375 rating for his left ear, but when we go and convert that to binaural hearing loss, that jumps way, way down to, oh, I don't have those numbers handy, but I can get them. 13.375. So my point in saying this is, this is normal. And it fairly compensates. Additionally, this is the way that this actually follows the statutory scheme. Because what it does is it looks at the nature of the injured worker's totality of their hearing loss, including tinnitus, and says, is the totality of the hearing loss binaural or monaural? If there's just peer-tone testing for monaural, the law is clear. You only get monaural hearing loss because Congress put in Section 10A. But if the totality of the circumstances looks at, this is a binaural hearing loss because the tinnitus has implications on the other ear, that is the reason why the AMA guides has this conversion formula. And it fairly compensates the individual who's getting the binaural rating for their peer testing, because it reduces that peer testing down. And then it also gives fair compensation for the tinnitus, which is impacting them binaurally. I guess I want to go back to the C21 issue, because there was an issue raised as to whether this was final. And the argument is made, well, no, we just need to do a kind of up or down on C13. And once we know the answer to that, we can then just do the calculation. C21 is a completely different analysis. And so that raises the question is, if there's a C21 issue in this case, is this appeal proper here? Because I don't think that the C21 analysis has not been done by anybody, I don't think. It has not. And it would probably not be applicable to a summary judgment decision, which this case was decided on. There would be facts and issue. But for... Why do you say that? Why do I say that? What facts would be at issue? How the tinnitus affected this gentleman? Yeah, whether or not this individual suffered a loss of earning capacity because of his tinnitus. We were able to reach most of the, or we were able to reach all of the factual determinations on the case of it being under Section 8. But you are correct. Section C21 would be a very different story. But as of right now, and for, since the 5th edition defined it, or defined tinnitus as part of an overarching hearing loss, the Act has always treated it under... I don't know that, and this is the problem, I think, with your position under this, is I don't think it defines it as part of an overall hearing loss. It defines it as part of an impairment. It's something that would affect somebody in their daily activities. But the statute does say hearing loss, and then the guides have a measurement for detecting that, which is an accepted set of tests. Tinnitus is different. It's a subjective piece of the overall impairment. Subjectivity is part of every single impairment that's dealt, whether scheduled or unscheduled. For example, in a condition that involves pain, pain can increase the scheduled award. It's completely subjective. There are no pain tests. Same with tinnitus. The defense's argument as to the subjectivity of tinnitus is a red herring. The Act allows subjective complaints to be compensated. In fact, a claimant's subjective, credible but subjective determination that they suffered an injury is oftentimes credited, even without medical testimony of any kind. No one's suggesting that Mr. Tower does have rateable hearing loss in both ears. He has it in one ear, and then the argument is, let's do this conversion to binaural, and then at that point under the guides, we can add in tinnitus, and that's how we get to where we are today. But you have to make that move under the conversion formula to get there. And then we have all these other cases. The Ninth Circuit hasn't addressed this, but other circuits have, and I think the board eventually embraces this to say, well, we don't do that for tinnitus, but we do do it for tinnitus. This court could very much decide that, well, he only has pure tone hearing loss in his left ear, therefore we aren't going to listen to the AMA guides' mandate that it be monaural, but still allow him to be compensated for that tinnitus just in a monaural sense. What would be the basis for that under the guides, which talk about having to move from binaural to binaural? There would not be a basis under the guides, because the guides very specifically say tinnitus is a binaural condition. And so what this court would be saying is, the guides aren't applicable in this case, and from a legal standpoint, tinnitus should be compensated monaurally. But what doesn't make sense is to say, because this is a monaural hearing loss, Mr. Tower, who has severe tinnitus, he takes a sleeping pill to get to sleep, it was prescribed in a hospital, those facts are not disputed, would not get any compensation, where if he had 15 more decibels of noise in his right ear, he would have gotten compensated. It creates a dissonance between those two classes of workers simply because of how the act compensates one ear versus the other. No, I mean, you're making fair points. I guess the question is, to whom should they be made? Because this seems like a criticism of just the way the statutory scheme is drafted. Maybe it's outdated. No, it's not a criticism of the statutory scheme, because I think under either of those scenarios, we're compensating the injured worker fully. And the courts have that within their discretion, because nowhere in the act did Congress define what to do with tinnitus, which is, again, part of the reason why we do kind of tangentially mention this 8C, or I'm sorry, the C21 argument, because the act says, hey, we haven't thought of everything. Congress said that, but that means it's compensated under C31. I will see it the rest of my time. Thank you. Can I just ask one last question? So if he had zero hearing loss, would you be looking at the tinnitus under Section 21, because it keeps him up at night and he has to take them? If this court determines... Or is it just not compensable because the Fifth Addiction says there has to be measurable loss? Right now, I would say it's not compensable, but if this court finds that tinnitus is not hearing loss, I'd be making a different argument tomorrow. Good morning, and may it please the Court. My name is Olga Maris Fernandez, and I represent the Director of the Office of Workers' Compensation Program. Today, the Director asked this court to dismiss employers' petition for review. I'm going to be addressing briefly the lack of jurisdiction in this case before we reach the discussion of the merits that my colleagues had already started. Section 21C of the Act gives courts jurisdiction to review final orders of the board. The board's remand order here is not final within the meaning of this section. This court has held that board remand orders are generally unreviewable. Employers' argument that the board order is not practical standpoint should be rejected. Jurisdictional rules are intended to be bright light rules. This court in Bish v. Brady-Hamilton held that, contrary to appeals from district court judgments and the provisions of interlocutory appeals under Title 28, Section 1291 and 1292b, Congress has provided nothing similar under the Longshore Act. Thus, any potential value in occasionally applying the pragmatic finality rule to board remand orders, like the party's request here, is outweighed by its derotions of the values of finality mandated by Congress here. We've said, you know, if it's purely a ministerial act, then that's final. And if all we're talking about here is the right interpretation of C-13, it seems that all that would be left, once the court decides what the proper interpretation of that would be, would be a purely ministerial act of just simply applying that. And we all know what the numbers is. It's either 9,000-something or 15,000-something. But what about C-21? Because Mr. Towers' counsel referenced that as another possibility. Is that part of this case? It hasn't been addressed by the board, and it is our responsibility. Was it raised before the board? I think claimant's attorneys say they raised it before the board. The director did not address it, and it is the director's position that it is not. Tinnitus in cases like this shouldn't be compensated under Section EC-21. When an injury, when a body part suffers an injury, under Sections EC-1 to 20, courts have held that then Section AC-21, it's in all other cases. So the compensation for disability should be done under that scheduled body part. Because as claimant's attorneys say, under Section AC-21, they would have to prove a different set of things, including loss of wage earning capacity. So if the court were hypothetically to say that Mr. Towers is not entitled to binaural hearing loss payments under C-13 for the tinnitus, is the government's position that he could seek that through C-21? Or do you think, no, because it's sort of irrelated? We think it should, it couldn't, well, they could try to argue it, but it is the director's position that it wouldn't be consistent with the Act. Because Section AC-13E mandates that hearing loss determination shall be made according to the AMA guides. When you go to Section 11.2 of the AMA guides, titled Hearing Aids Tinnitus, you see all the process, the steps and the calculations to include tinnitus as part of the hearing impairment. So what if a claimant has zero hearing loss, but does have tinnitus? Do they get compensation under any of this? We haven't had that set of circumstances yet presented, but they may not be able to get compensation for disability, but they would get medical benefits, which there are cases that we cited in our brief, and even the LJ recognized in his decision and order, which tinnitus could be compensated by itself. Under what provision? Section 907 of the Act, medical benefits. So if the court, does the court have any more questions about lack of jurisdiction? If the court reaches the issue, the court should find that the Act provides the appropriate measure of compensation, whereas here, a claimant has bilateral tinnitus. Contrary to employers or total terminals position, the board decision is not result-oriented, but it gives effect to every part of the Act. As I already mentioned, Section EC-13 not only contains subsection A and B, but it has a clear mandate from Congress to adopt the standards for determining hearing loss. Does it matter that the AMA guides say that hearing loss is objectively measurable, but tinnitus isn't? So another way is, I mean, is it maybe that makes sense in a way of limiting the recovery of tinnitus to certain instances because it's not objectively measurable? Well, the AMA guide says that impairment is a combination of both, objective and subjective, and it comes to the doctors, and it is a credibility and factual determination by the LJs to then combine both aspects of objective and subjective determinations to get to that impairment rating and result. Impairment rating, but I mean, the statute says hearing loss. Yes, Your Honor, but both hearing impairment and compensation or determination of hearing loss are extrinsically intertwined. Both under the Act are regulations that implement this section of the Act, 20 CFR 702.441, talk about hearing loss and hearing impairment, the long-short procedural manual. Merriam-Webster defines impairment as loss of function, and loss is then defined as something that reflects to impairment as well. So this mix of impairment versus loss, it is the distinction total terminals tries to do in its brief and its reply brief. It is a construed, or as they even admit it, a subtle. It's too subtle, according to Merriam-Webster's, according to the long-short Act, and according to the regulations. What do you make of total terminals point in its reply brief that under the position you're advocating for today, there could be situations in which somebody has a worse hearing loss in one ear and lower tinnitus, and then ends up getting compensated less. What would we do in that case? That hypothetical could happen, and claimants are masters of what they request from the district directors and the ALJ, so it would be their determination on what they're seeking compensation for. However, even if that result could happen, it doesn't give license to disregard the clear language of the Act, which mandates to find determination of hearing loss under the AMA guise, or follow the AMA guise for that. Is the position you're asking for today consistent with the position that you've taken in the non-tinnitus cases, your office? Yes, your honor. In those cases, claimants only had monaural hearing loss, and no one or none of the claimants were asking for the additional impairment rating or percentage for tinnitus. It is our position that that is still good law, and those cases are still applicable. However, in cases like Mr. Tower, where he has hearing loss, monaural hearing loss, and a bilateral tinnitus that affects his activities of daily life, then the conversion would be in accordance with Section AC-13 of the Act. Further questions, your honor? Can I go back to your finality argument? What else did the Board expect the ALJ to do on remand? In addition to filing a compensation, and issuing a compensation order, that for us is enough that if it's not part of the case, it's not a final order on the record, even taking that apart, that technical aspect of it, the Board in Section, in its ER-4041, states that once his monaural impairment has been calculated, the ALJ may rely on accredited doctor's opinion and add up to 5% to account for tinnitus impairment. Here, parties have said that there is no disputed fact. However, the ALJ denied medical benefits the parties could still revisit medical benefits. The parties could revisit their stipulations since the ALJ's order has been vacated on tinnitus as well, or percentages. So, the case and the administrative process is still not finished here, your honor. Okay, but Dr. Longman already calculated the tinnitus as 4%, so that calculation's already been done. So, the Board expected that the ALJ would then address and reconsider other issues that had already been raised, like whether or not tinnitus should be compensable under C-21? Well, the Board cites in a footnote that medical benefits were still unresolved. That's part of the order of the ALJ. They say that parties should consider and discuss potential issues including medical benefits. Parties before this Court stated in their oppositions to our motion to dismiss that even if the medical benefits issue arises, it is unlikely that it would be part of this litigation. In the case cited by Total Terminals, National Steel v. McGregor, the parties told this Court as well that they were not going to seek temporary partial disability, and this Court found that it was not sufficient to abandon that claim, to tell this Court to try to correct jurisdiction defect, that they were not going to seek this. So, even if it's unlikely that the recalculation of benefits would create a new dispute, that is not sufficient, and it is not out of the extraordinary circumstance for this Court to abandon the finality requirement mandated by Congress here, Your Honor. Okay, so when you refer to medical benefits, you're talking about the Section 907 application. And I can cite to the ALJ's order in which it denies, it's ER 777 and 78. Thank you. Thank you. Thank you, Your Honors. Good morning. So on the last point about medical benefits, there are no medical disputes that would be right for adjudication before the ALJ. If there were something to arise about medical in the future, which could happen in any long-short case because medical benefits are never time-barred, it begins at the OWCP level, and it would be a separate litigation. So there is nothing that the ALJ would do on remand that would affect this Court's review of the Board's decision. On the medical benefits? Yeah, or on anything. What about the C-21 issue? Well, you know, that was another thing that I wanted to circle back to, but that issue was not, it was not discussed by the ALJ in his decision. It was not discussed by the ALJ. Any inkling of that argument was in a response to our motion for reconsideration on bonk. So that issue is sort of hearing about it in a substantive way for the first time today. Did Mr. Tower in front of the ALJ argue that if he was not entitled to an additional payment for tinnitus based on C-13, that he should receive something additional under C-21? I don't believe so. I mean, from my memory, the answer is no. And in terms of whether that would be something to consider, I think under these facts, it is better to think of the schedule. And tinnitus has been compensated in cases of binaural hearing loss, that is where there's loss in both ears, for many years in many cases. And if, once something is compensated under the schedule, that's exclusive. The schedule is an exclusive remedy. And the Supreme Court talks about that in PEPCO. It's not as though a claimant is free to say, well, I can't get anything under the schedule, so let me go try to argue for a loss of earning capacity under C-21. So both because the issue really has not been raised or discussed before today in any substantive way, and because tinnitus has traditionally been compensated under 8C-13, I think that that is appropriate. It's just that it's limited to situations where you have a loss in both ears. So I see that my time is running out. Can I ask you, though, whether you believe that the board expected the ALJ, well, let me rephrase that. So when the board remanded, could the ALJ then consider medical benefits under Section 907, or the loss of wage earnings under 908C-21, or is that waived or foreclosed? I think that would be waived or foreclosed. The ALJ has already closed the, well, yeah, I mean, I think under the board's order, those issues would not be addressed on remand. There did not discuss 8C-21, and as I said, there are no disputes about medical. If there were disputes in the future, that would have to begin at the OWCP level and be subject to informal dispute resolution processes, and it would, if it ever occurred, it would be a separate case and separate litigation. OWCP? The Office of Workers' Compensation Programs. They administer the act. Thank you, and actually, the panel has a follow-up question for Ms. Peters, and Mr. Holloman will give you an opportunity to respond to that if you wish. Thank you, Judge Lee, for this bonus round. I just wanted to follow up on the medical benefits piece of this, and whether there's anything more that needs to be done in this proceeding based on that, because I saw you shaking your head no. I just wanted to get your perspective on that. Well, I agree with the employer. The employer has agreed to pay medical expenses. There is no dispute, and if there was a dispute that arises, we do believe that the district director would be the proper arbitrator of that dispute. Okay, so you don't think the medical benefits issue creates a finality problem here? No, not at all, Your Honor. The ALJ just kind of went beyond what the parties were really litigating the case about when he put that in his order. Okay, anything else from you on the C-21 issue? I'm just trying to, it was not argued before the ALJ, but it was argued before the BRB, at least on reconsideration. I haven't been able to get through the whole BRB brief to confirm it. Okay, that's all I have. Thanks. Great. Thank you all for the very helpful argument. The case has been submitted, and you're recessed for the day.
judges: LEE, BRESS, Navarro